GUSTAV J. GRUENDLER MFG. CO., Inc., v. HARRY L. HUSSMANN REFRIGER-ATOR & SUPPLY CO. *

HARRY L. HUSSMANN REFRIGERATOR & SUPPLY CO. v. GUSTAV J. GRUENDLER MFG. CO., Inc.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1926.)

Nos. 7311, 7312.

Patents ⬤⇒328—Schulde, 1,225,682, for counter refrigerator, claims 1 and 2, held not infringed, and claim 3 valid and infringed.

The Schulde patent, No. 1,225,682, for a counter refrigerator, claims 1 and 2, *held* not infringed, and claim 3 valid and infringed.

Appeals from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit in equity by the Harry L. Hussmann Refrigerator & Supply Company against the Gustav J. Gruendler Manufac-

*Rehearing denied February 21, 1927.

turing Company, Incorporated. From the decree, both parties appeal. Affirmed.

Amasa C. Paul, of Minneapolis, Minn., and John H. Bruninga, of St. Louis, Mo., (John H. Cassidy, of St. Louis, Mo., on the brief), for plaintiff.

J. Henry Kinealy and Bruce S. Elliott, both of St. Louis, Mo., for defendant.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Cause No. 7311 is an appeal and No. 7312 a cross-appeal from the decree of the District Court for the Eastern District of Missouri. The Harry L. Hussmann Refrigerator & Supply Company, hereinafter, for brevity, called the Hussman Company, is the owner of patent No. 1,225,682, granted May 8, 1917, to one John Schulde upon an application filed August 21, 1915, for improvements in showcase refrigerators. The Hussmann Company brought suit in the District Court for the Eastern District of Missouri against Gustav J. Gruendler Manufacturing Company, Incorporated, hereinafter called the Gruendler Company, for infringement of claims 1, 2, and 3 of this patent. The defenses relied upon by the defendant are (1) noninfringement; and (2) invalidity of the claims. The trial court held claims 1 and 2 not to be infringed, and claim 3 to be valid and infringed. The claims in suit read as follows:

"1. A counter refrigerator, comprising an elongated showcase having transparent panels, a refrigerating unit including a container adapted to receive a freezing mixture and mounted at one end of said showcase, said container having a vertical passage at the back thereof, and having tubes passing therethrough and open at their rear ends to said vertical passage and at their forward ends to said showcase, constructed and arranged to permit a circulation of air through the unit and along the back thereof, and said unit being adapted and positioned to cause a current of air to circulate in a path from the bottom of said unit along the bottom of said showcase and in a return path along the top of the showcase into the top of said unit.

"2. A counter refrigerator, comprising an elongated showcase having transparent panels, a refrigerating unit including a container adapted to receive a freezing mixture and mounted at one end of said showcase, and a drip pan arranged below the container and receiving the brine therefrom, said container having a vertical passage at the back thereof

and having tubes passing therethrough and open at their rear ends to said vertical passage and at their forward ends to said showcase constructed and arranged to permit a circulation of air through said unit and along the back thereof, and said unit being adapted in position to cause a current of air to circulate in a path from the bottom of said unit along the bottom of said showcase and in a return path along the top of the showcase into the top of said unit.

"3. A counter refrigerator, comprising an elongated showcase provided with transparent panels, a refrigerating unit adapted to receive a freezing mixture and mounted at one end of said showcase, said unit having passages constructed and arranged to permit a circulation of air therethrough and along the back thereof, and said unit being adapted and positioned to cause a current of air to circulate in a path from the bottom of said unit along the bottom of the showcase and in a return path along the top of the showcase into the top of said unit, and a pan extending along the bottom of the showcase beyond said unit and adapted to receive the brine from said unit."

The defense of invalidity involves prior use, anticipation, and, in a certain sense, want of patentable novelty. Upon the defense of anticipation 51 patents are cited, and upon the claim of prior use 9 firms and a great number of constructions are cited. The consideration of these citations consumes a great many pages of the record and would require minute and critical analysis; however, in the brief and argument of appellee and cross-appellant, chief reliance is placed upon nine of the patents cited, to wit, Joyce, Chase, Zimmerman, Pike, Wight, Weiss et al., Campbell, Crabtree, and Hall. In our judgment, the balance of such citations may be disregarded.

The Joyce patent was for a showcase, and the principal feature stressed was the arrangement with glass panels permitting the contents to be exhibited. Necessarily it had a refrigerating unit, which was placed in the center of the case, with no provision for directed currents of air. It had a waste pipe for the discharge of water accumulation.

The Zimmerman patent was for a refrigerator car, and while, of course, it provides refrigeration, with none of the elements of a showcase, it does have pipes passing through and from the refrigerating unit, which have discharging ends towards the center of the car, are preferably flaring in the center direction, and are intended to conduct the cold air into the central portion of the car. In this respect these pipes correspond in a measure to the tubes described in claims 1 and 2. A circulation of the air is thus permitted, but not in the orbital method here disclosed. Furthermore, the location of the pipes as described would be impractical in a showcase construction.

The patents of Pike, Wight, Campbell, Crabtree, and Hall do not embody the principle here involved.

The Weiss patent is for a showcase and ice box, and discloses nothing more in substance than means of projecting refrigerated air into the food compartment, and glass panels for exhibition purposes. The combination of the Weiss and Pike patents, urged by counsel for the Gruendler Company, lacks the device in claim 3 of the patent in suit for compelling and directing the circulatory current of air, and, in any event, to produce the result here claimed would require the combination and coaction of the elements of these two patents. In such case the use of elements, old in the art, combined to produce a new result, is not vulnerable to the charge of anticipation. To the Chase patent reference will hereafter be made.

Turning now to the claims in their order, instead of the tubes specified in the patent in suit, defendant's device has what the trial court aptly described as "modified legs, with yoke-shaped, or A-shaped, openings between such legs." Counsel for the Hussmann Company in argument stated that this first claim was infringed, if these passages in defendant's structure are held to be equivalent to tubes. The charge of infringement was practically limited to this claim of equivalence. The trial court correctly found, from the many patents offered, and otherwise from the record, that modified legs or downward extending tubes similar to those employed in defendant's structure are old in the art of refrigeration; but, even if this were not so, a special function is by the patent attributed to these tubes. The specification says:

"It is to be noted that, because of the tapered flues having their larger ends disposed outwardly, a free passage of the air into and through these flues is induced, and, further, that the air entering the flues becomes chilled and contracts, for delivery, in such contracted condition, through the smaller or restricted ends of the flues into the chamber 9, where it will undergo a further chilling and consequent contraction, and finally pass from said chamber into the other flues of the series and outward therethrough into space 20. During its outward passage, the chilled or refrigerated air first enters the flues at their smaller

ends in a highly contracted state, and will therefore, as it flows through the now gradually widening passages, be relieved of compression and allowed to suddenly expand, with a resultant lowering of its temperatures."

This function is not produced by the passages employed instead of tubes in the Gruendler structure. It is, however, despite this limitation in argument, contended that the circulatory principle of the patent is present and operative under the terms of claim 1. This, if true, could not aid the patentee in the absence of a material element of his combination. Moreover, this same function of circulation, under substantially identical conditions as described in claim 1, is anticipated by the patent to Chase, No. 210,955, for improvement in refrigerators.

It is conceded that the same situation exists as to claim 2, which has only the added element of a drip pan under the refrigerating unit. This element, itself old in the art, and exercising no new function in the combination, adds no strength to this claim of the patent. We concur in the conclusion of the trial court that claims 1 and 2, if valid, are not infringed.

Claim 3 has all the elements of claims 1 and 2, with the exception that it substitutes the term "passages" for "tubes," and instead of "a drip pan arranged below the container" provides for "a pan extending along the bottom of the showcase beyond said unit and adapted to receive the brine from said unit." This brine pan is provided with transverse corrugations, which give a larger surface area, adapted to be more readily and effectually chilled under the action of the cold brine passing over it. The corrugations act as baffles, for retarding the current of cold air until it reaches the end of the show case farthest from the refrigerating unit.

It is here to be observed that the structure upon which this patent was issued is a showcase refrigerator, which differs from the ordinary refrigerator, not only for purposes of exhibition of contents, but also in the length of the case required to be chilled. It is obvious that one of the problems presented is to chill sufficiently the outer or more extended portion of the case, as distinguished from that next to the refrigerating unit, as in an ordinary refrigerator; and this can be accomplished only by a stratum of air retaining its chill to the greatest possible degree, drawn and directed to the outer lim-

it of the case. This the patentee seeks to accomplish by this corrugated brine pan, which extends, as has been said, throughout the length of the case and below it, thereby holding this cold stratum of air for a longer period at the lower part of the structure, before it rises to be returned to, over, and behind the refrigerating unit for rechilling. This form of brine pan adds a very beneficial element, and one not found in the prior art. It is an important feature of the dominant principle which underlies the invention. For this brine pan the Gruendler Company in its structure substitutes a series of closed pipes, of which the trial court said:

"The defendant's series of large closed pipes are, in my opinion, equivalents in result and in structure, because I think they are mere modifications of plaintiff's pan, which modifications would readily suggest themselves to any one who is desirous of producing the identical results obtained by plaintiff's riffle pan, and at the same time desirous, if possible, of avoiding infringement."

We concur in this view. The openings in the alleged infringing structure are equivalents of the passages described in this claim of the patent, which reads in like manner upon all the other elements employed in that structure. It is true that substanially all the structural elements used in the patent in suit are to be found in some form in the prior art which deals with refrigeration. Refrigeration necessarily implies cooling processes, which must, in nearly all cases, present very similar features. By his combination, however, the patentee sought, and obtained, a new and useful result of high commercial value, as disclosed by the record.

Some stress is laid by the Gruendler Company upon the findings of the trial court that there was "considerable proof touching an alleged prior use of a device similar to that of plaintiff as early perhaps as 1912." But it should be noted that the court, in resolving this proof, did not find that appellant's invention was thereby anticipated, but merely that this fact serves to make this field of invention a very narrow one, with the result that the Schulde patent must be restricted practically to the device and elements described and their obvious equivalents.

Our conclusion is that claims 1 and 2 are not infringed, and that claim 3 is valid, and is infringed. It follows that the decree below should in all things be affirmed; and it is so ordered.